BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

CYNTHIA FREY (DCBN 475889)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    Cynthia.Frey@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO.: 16-0039 BLF |
| | ) |
|     Plaintiff, | ) UNITED STATES' SENTENCING |
| | ) MEMORANDUM |
|   v. | ) |
| | ) |
| ALFRED GEORGIS, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

**INTRODUCTION**

The defendant, Alfred Georgis, plead guilty to conspiracy in relation to the transportation of stolen goods in interstate commerce, in violation of 18 U.S.C. §§ 371 and 2314. The defendant's plea was pursuant to a Plea Agreement filed under Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. The United States Probation Office calculated in the Presentence Investigation Report (PSR) that the total adjusted offense level is 17 and the Criminal History Category is IV, with a resulting Guidelines range of 37 to 46 month term of imprisonment, in Zone D of the Guidelines. The United States agrees with Probation that a variance outside the Guidelines range is not appropriate. The United States and Probation are recommending a low end Guidelines term of imprisonment of 37 months, three years of supervised release, a fine to be determined by the Court, a $100 special

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF              1

assessment, and an order of restitution in the amount of $585,715.  The United States submits that this sentence is necessary to adequately deter the defendant from committing any offenses in the future and is sufficient, but not greater than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).

## DISCUSSION

It is now well established that in determining the appropriate sentence, this Court must conduct a two-step inquiry: (1) it must first correctly calculate the applicable Guidelines range as the "starting point"; and (2) it must next assess the factors set forth in 18 U.S.C. § 3553(a) to fashion an individualized sentence that is sufficient, but not greater than necessary, to achieve the aims of the statute.  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

## I.      Offense Conduct

Between March 27, 2013 and January 22, 2015, the defendant agreed with Davis Kiryakoz and others to transport stolen wine in interstate commerce.  As part of this conspiracy, the defendant, Kiryakoz, and others were involved in stealing wines from various restaurants and wine merchants, including The French Laundry, Alexander Steakhouse, and Fine Wines International, valued at over $871,000, and then transporting the wines for sale to a buyer in North Carolina (the Buyer).  The United States also obtained evidence that during this conspiracy, the defendant was involved in a number of other burglaries of high-end wines, valued together with the offenses described above at approximately $1.5 million, that were transported in interstate commerce by his co-conspirators to the Buyer in North Carolina.  Nevertheless, the Plea Agreement by its terms limits the relevant conduct to that involving The French Laundry, Alexander Steakhouse, and Fine Wines International.  The following is a summary of the facts to which the defendant pled guilty.

### Transportation of Stolen Wines from French Laundry

The defendant conspired with Kiryakoz to steal approximately 110 bottles of high-end wines, valued at the time at approximately $549,447, from The French Laundry, in Yountville California in the early morning hours of December 26, 2014.  The defendant and Kiryakoz also made arrangements to sell approximately 63 bottles of stolen wines from California to the Buyer in North Carolina.  The defendant and Kiryakoz shipped the wines from Modesto, Los Gatos, and San Jose, California, to North Carolina.   In exchange, the defendant received a wire transfer of approximately $7,500 from the Buyer

and Kiryakoz received wires totaling approximately $66,700.  The defendant expected to receive the entire payment for the second half of wines shipped, but never received it because the Buyer learned that the wines had been stolen from The French Laundry and told the defendant that he would not pay because they were stolen.  The defendant and Kiryakoz told the Buyer to pay or return the wines, indicating that they would get other buyers.  The defendant and Kiryakoz did not get the wines back from the Buyer.   Instead, the Buyer arranged to have the wines turned over to law enforcement to be returned to The French Laundry.

As indicated above, the total value of the wines stolen from The French Laundry was approximately $549.447.  The value of the stolen wines that were shipped in interstate commerce was approximately $221,374.  The French Laundry, as part of its victim impact statement, reported that its insurance carrier paid $253,715 and that The French Laundry paid a $10,000 deductible, for a total loss of $263,715.

**Transportation of Stolen Wines from Alexander Steakhouse.**

The defendant also conspired with Kiryakoz to steal approximately 29 bottles of high-end wines, with a value of approximately $32,000, from Alexander's Steakhouse in Cupertino, California in the early morning hours of November 8, 2014.  On or about November 8, 2014, the defendant arranged with his co-conspirators to ship approximately 17 bottles of the stolen wines from California to the Buyer in North Carolina.  The defendant and his co-conspirators shipped the wines from Los Gatos, California. The defendant and Kiryakoz instructed the Buyer to wire Kiryakoz $5,750 and to send Georgis via Federal Express an official check made out to Alfred Georgis in the amount of $5,750.

As indicated above, the total reported value of the stolen wines was approximately $32,000 and the value of the stolen wines shipped in interstate commerce was approximately $25,550.[1]

**Transportation of Stolen Wines from Fine Wines International**

Although the defendant did not specifically plead guilty to conspiring with Kiryakoz and others to steal wine from Fine Wines International in San Francisco for later sales and transportation to North Carolina, he did agree that the conduct, which was part of the conspiracy, is related conduct.  In fact,

---

[1] The United States has not received a victim impact statement from this victim.

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF                                    3

evidence produced to the defense demonstrates his involvement in the conspiracy.  The wines were stolen shortly after midnight on March 27, 2013 and amounted to approximately 142 bottles of high-end wines, with a value of $290,000.  Cell site information shows that Georgis' co-conspirator, Kiryakoz, was in the vicinity of Fine Wines International, located in a warehouse district of San Francisco, at midnight when the burglary occurred.  In addition, cell phone records show that Georgis' unindicted co-conspirator made a flurry of approximately sixteen calls to Georgis, Kiryakoz, and the Buyer, starting a few hours before the burglary and ending the next afternoon.  The defendant and his co-conspirators then made arrangements to ship approximately 50 bottles of the stolen wines from California to the Buyer in North Carolina from March 28, 2013, to April 3, 2013.  Georgis' co-conspirators received approximately $67,000 in money orders from the Buyer.   Bank records show that Kiryakoz and Georgis both cashed in a number of the money orders signed by the Buyer.

As indicated above, the total value of the stolen wines was approximately $290,000 and the value of the stolen wines shipped in interstate commerce was approximately $127,755.  The insurance carrier for Fine Wines International paid out approximately $255,333.

## II.    Guidelines Range

### A.    The Offense Level is 17

The value of the wines stolen in relation to the above-described offense was conservatively estimated at $871,447, and requires a 14-level increase in offense level, with a final adjusted offense level of 17.  Although the defendant did not specifically plead to the conduct associated with the wines stolen from Fine Wines International, the defendant does not dispute the offense level of 17.

It is irrelevant whether the defendant was charged or convicted of the theft of the wine in this case, as the Sentencing Guidelines "require rather than prohibit consideration of conduct beyond the counts on which a defendant was convicted." *United States v. Rose*, 20 F.3d 367, 371 (9th Cir. 1994) (quoting *United States v. Fine*, 975 F.2d 596, 599 (9th Cir. 1992)).  *See also* U.S.S.G. § 1B1.3.

### B.    The Defendant's Criminal History Category Is IV

The defendant has a criminal history category IV, which is serious enough, but his criminal history is far more extensive than is represented in his criminal history calculation.  The defendant has racked up approximately 25 criminal convictions, including no less than seven felony convictions from

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF                                                      4

1990 to the present involving burglaries (including some very similar to the instant case), thefts, and forgery. *See* PSR, ¶¶ 43-67. In addition, the defendant was on probation during most of the criminal conduct he committed.

Moreover, the defendant was convicted in 2008 for <u>eight</u> counts of second degree burglary, which counted for only 3 points. *See* PSR, ¶ 67. He received 90 days of jail on one burglary count and 32 months on all other counts, all to run concurrent. Thus, the defendant received one single sentence for a number of separate offenses. In fact, the San Jose Police Department (SJPD) report from April 2008, which was produced to the defense, indicates that SJPD was investigating the defendant and another suspect for a number of burglaries of BEVMOs, Safeways, and high-end wine stores in which expensive bottles of alcohol were stolen. The defendant was arrested in relation to these burglaries on April 24, 2008 and admitted that he had been stealing from Safeway for over one year and BEVMO for over two years. He admitted to stealing cases of expensive champagne from a BEVMO in Greenbrae, as well. Georgis explained how he would then sell the stolen wines at a discount and estimated that he made approximately $60,000 a year from this type of criminal activity. *See* PSR, ¶ 67. The defendant was paroled in 2010 after serving less than two years in prison for all these burglaries, and his parole was discharged in August 2012.

Nevertheless, in 2013, a few months after his parole was discharged, the defendant began a similar scheme, this time involving more expensive wines, and continued that criminal activity for at least another two years.

**III.    A Sentence of Thirty Seven Months Is Sufficient, But Not Greater than Necessary to Fulfill The Goals of 18 U.S.C. § 3553(a).**

In sentencing the defendant, this Court must consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). The factors that this Court must consider under Section 3553(a) include:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF                                          5

- pertinent Sentencing Commission policy statements, § 3553(a)(5);

- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and

- the need to provide restitution to victims of the offense, § 3553(a)(7).

"The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of § 3553(a). *Carty*, 520 F.3d at 991 (internal quotations omitted). Those goals include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- to afford adequate deterrence to criminal conduct;

- to protect the public from further crimes of the defendant; and

- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)

These factors militate in favor of a Guidelines sentence in this case based upon the seriousness of the offense and the defendant's extensive criminal history, which was under-represented by his criminal history score of seven.

### A.    The Offense is a Serious and No Downward Variance Is Warranted.

Although the defendant is charged with transportation of stolen wines, the facts to which the defendant pled guilty make it clear that stealing the wine was part of the conspiracy and the defendant was involved in the burglaries.  Burglary is serious crime that is violent in nature.  Although burglary in California is not considered to be categorically a crime of violence, burglaries can easily lead to violence if any persons were inside the establishments and attempted to protect the wines and themselves.

In addition, the amount of stolen wines at issue and the duration of this conspiracy make this a serious offense.  The value of the wines stolen is almost $900,000, which is significant. Moreover, the defendant's conduct was not limited to one incident.  Rather, he participated in a course of conduct that took place over almost 2 years between early 2013 and 2015.

Moreover, as indicated in the summary of the offense conduct, there is evidence that the conspiracy involved several more burglaries and shipments from California to the Buyer in North Carolina, which amounted to approximately $1.5 million in stolen wines.   Had the defendant been required to plead to the entire conspiracy, his offense level would have been two levels higher, and his Guidelines range would have been 46 to 57 months (based upon a Criminal History Category IV).

The United States already agreed to limit the exposure of the defendant to only the above discussed three burglaries and subsequent shipments of stolen wines.  In so doing, the defendant is already receiving leniency and, thus, no downward variance is appropriate.

**B.      The Defendant's Criminal History is Under-Represented and No Downward Variance is Warranted**

As set forth above, the defendant had over seven felony convictions for theft, burglary and forgery, which includes his conviction in 2008 for a number of burglaries of alcohol from various stores in the Bay Area.  The defendant admitted to the conduct and to then selling the alcohol.  Still, the defendant only got a 32 month sentence and served roughly 21 months before he was paroled.   His parole was not discharged until August 2012.   Only a few months after his parole was discharged, the remained undeterred by his last term of imprisonment and began anew committing the same scheme with more expensive wines, and continuing that criminal activity for at least two years.

The United States agreed by the terms of the Plea Agreement to a low-end Guidelines sentence, which already provides leniency.   The United States is not seeking an upward departure to reflect the fact that in the defendant's criminal history was under-represented.  Had he been sentenced separately on his 2008 convictions for a number of different burglaries, the defendant's criminal history category would have been VI and his resulting Guidelines range would have been 63 to 78 months (based upon an offense level 19 with all related conduct).

Moreover, the defendant's last conviction in 2008 for burglaries of alcohol from a number of Bay Area stores, which presumably was valued at far less than the value of wines stolen and transported in this case, resulted in a sentence of 32 months.  The defendant continued committing the same criminal scheme as soon as his parole was discharged in late 2012.  The defendant was undeterred by this last sentence for similar conduct and this Court should not impose a sentence less than the last sentence he

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF                                        7

received.   A sentence of 37 months in this case, and in the context of this defendant's criminal history is lenient enough.

### C.    A Variance is Not Warranted Based on Alien Status

The defendant seeks a downward variance of thirteen months to a term of imprisonment of 24 months, alleging that because he is a deportable alien: (1) he will not be able to serve part of his sentence in a half-way house; (2) he will not be able to obtain a 12 month reduction in his sentence through RDAP; and (3) he will ultimately be deported to Iraq.   The case authorities do not support such a variance, nor do the facts of this case.

First, there is nothing before this Court that demonstrates that the defendant will in fact not be placed at a halfway house, not receive RDAP treatment or other drug treatment, or in fact be deported. This defendant has been subject to removal since 2006.  He was not taken into custody to effectuate that removal order until May 2017 because Iraq refused to take the defendant, and thus he was allowed to remain in the United States lawfully and was only required to check in with his immigration officer as scheduled.  In addition, if the defendant believes, as he says in his Sentencing Memorandum, that he will be persecuted if he is removed to Iraq, he could seek political asylum or some other form of relief.  As of September 2017, the defendant had not filed for any such relief.  Moreover, although removal appeared imminent this year based upon a change in political and diplomatic circumstances with Iraq, it is far from certain such a climate will remain when the time comes for him to be released or released to a halfway house.  Finally, there is nothing before this Court to support the proposition that the defendant will not receive drug treatment while in prison, whether it be RDAP or another program, though it appears he may not receive a reduction in his sentence for completing such a program.  Thus, these considerations are speculative and should have no bearing on the sentence he receives.

Second, the defendant's citation to *United States v. Charry Cubillos*, 91 F.3d 1342, 1344 (9th Cir. 1996) to support his assertion that sentencing courts may consider a defendant's status as a deportable alien as a basis for a downward departure is misplaced.  In fact, what the Ninth Circuit held in *Cubillos* was that such departures are rare, and accordingly sent it back to the sentencing court for a refined assessment in deciding whether this factor (his alien status) is so unusual as to fall outside the heartland of cases. *Id*. at 1345.

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF                                         8

Rather, the Ninth Circuit has held that the threat of deportation is not a factor that the district court may consider for sentencing purposes. *See United States v. Lipman,* 133 F.3d 726, 730 (9th Cir. 1998) ("A sentencing court cannot downwardly depart based on the fact that a defendant faces future deportation. The possibility of deportation does not speak to the offense, nor does it speak to the offender's character, and thus is not a proper ground for departure. Moreover, if deportability were held to be a valid ground for departure, aliens and citizens would always be treated differently simply because of their citizenship status"); *United States v. Alvarez-Cardenas,* 902 F.2d 734, 737 (9th Cir.1990) (deportability is not a valid factor for departure because it merely describes the defendant's status, and does not "affect [defendant's] culpability or the seriousness of the offense"); *See also United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993) ("collateral consequences from conviction are not a basis for downward departure").

Although the cases above address whether it is appropriate to allow for a downward departure based upon alien status, the same considerations make it inappropriate to consider alien status as a variance under 3553(a). Specifically, a person's alien status does not speak to his character. Nor are collateral consequences from a conviction a 3553(a) factor. Moreover, the defendant's suggestion that imposing a 24 month sentence in this case would correct a perceived "sentencing disparity," would actually do the opposite, it would create a sentencing disparity. The Guidelines are in place to determine a Guidelines range as a means of avoiding sentencing disparity. Accordingly, the defendant's alien status should not warrant a downward variance.

**(D) No Variance is Warranted to Account for Time in Custody With ICE**

It is ironic that the defendant's final argument is that this Court should give a downward variance because he was in ICE custody from May 31, 2017 until September 11, 2017 and will not receive Bureau of Prisons credit for that time in custody. During this entire time, the defendant argued that he should remain in ICE custody to be removed to Iraq and aggressively opposed all motions seeking his detention in federal custody pending trial. The defendant could have chosen to go into federal custody from the beginning. This is the defendant's own doing and should not be a factor considered for any variance.

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF                                9

**(E) The Restitution Amount Is $585,715**

Restitution was appropriately calculated by Probation based upon the full amount of the victims' losses. (*See* PSR, ¶ 115 and Recommendation; U.S.S.G. § 5E1.1.) The victims' losses are not limited to the value of the wines shipped in interstate commerce, as that does not constitute the full amount of the victims' losses. Thus, pursuant to the Guidelines, the defendant should be ordered to pay restitution in the amount of $585,715.

### D.   Based Upon Section 3553(a) Factors, A Sentence of Thirty-Seven Months Imprisonment and Three years of Supervised Release Is Appropriate

The sentence should reflect the seriousness of the offense, it should be significant enough to deter such conduct in the future and most importantly the sentence should be significant enough to protect the public from the defendant's criminal activities. The United States submits that a Guidelines sentence of thirty-seven months imprisonment and three years of supervised release is necessary to appropriately address all such considerations and is a reasonable and appropriate sentence in this case. The United Sates recommends the following sentence:

- A term of 37 months of imprisonment;

- Three years of supervised release;

- A fine as determined by the Court:

- A $100 special assessment:

- Restitution in the amount of $585,715

### CONCLUSION

In full consideration of the defendant's history and characteristics together with the other goals of sentencing, the United States respectfully requests that the Court sentence the defendant as set forth above.

DATED: January 2, 2018                                Respectfully submitted,

                                                      BRIAN J. STRETCH
                                                      United States Attorney

                                                      _____/s/_____
                                                      CYNTHIA FREY
                                                      Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM
CR 16-0039 BLF                                10